IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

LISA COTTER, OBO J.A., a minor,

    Plaintiff,        No. 06:12-cv-00113-HZ

  v.

CAROLYN W. COLVIN, Acting     OPINION & ORDER
Commissioner of Social Security,

    Defendant.


Rory Linerud
LINERUD LAW FIRM
P.O. Box 1105
Salem, Oregon 97308-1105

  Attorney for Plaintiff

S. Amanda Marshall
UNITED STATES ATTORNEY
District of Oregon

/ / /


1 - OPINION & ORDER

Adrian L. Brown
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

Franco L. Becia
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-2114

   Attorneys for Defendant

HERNANDEZ, District Judge:

   Plaintiff Lisa Cotter appears on behalf of her minor son, J.A., and brings this action

seeking judicial review of the Commissioner's final decision to deny child's disability benefits

under Title XVI of the Social Security Act which provides for supplemental security income

(SSI).  42 U.S.C. §§ 1381-1383f.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g)

(incorporated by 42 U.S.C. § 1383(c)(3)).  I affirm the Commissioner's decision.

## PROCEDURAL BACKGROUND

   Plaintiff applied for SSI on J.A.'s behalf on May 30, 2008, alleging an onset date of

January 1, 2001.  Tr. 10, 80-86.  The application was denied initially and on reconsideration.  Tr.

45-54.  On July 27, 2010, plaintiff and J.A. appeared with counsel for a hearing before an

Administrative Law Judge (ALJ).  Tr. 24-44.  On July 30, 2010, the ALJ found J.A. not disabled.

Tr. 7-23.  The Appeals Council denied review.  Tr. 1-5.

## FACTUAL BACKGROUND

   In the initial application, plaintiff alleged that J.A. is disabled due to depression, anxiety,

and "possible bipolar."  Tr. 92.  Subsequently, plaintiff reported that J.A.'s learning disabilities

2 - OPINION & ORDER

were worse and that he "suffers probable ADHD." Tr. 207.  At the time of the hearing, J.A. was

eleven years old and going into sixth grade.  See Tr. 13 (noting date of birth); Tr. 24 (noting

hearing date); Tr. 32. Because the parties are familiar with the medical and other evidence of

record, I refer to any additional relevant facts necessary to my decision in the discussion section

below.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which . . . has lasted or can be

expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§

423(d)(1)(A), 1382c(3)(a).

A child's SSI disability claim is evaluated according to a three-step procedure.  20 C.F.R.

§ 416.924(a).  First, the ALJ must determine whether the child has engaged in substantial

gainful activity.  Id.  If so, the child is deemed not disabled and the inquiry ends.  Id.  If the child

has not engaged in substantial gainful activity, then the ALJ must determine whether the child

suffers from a severe impairment or combination of impairments that is severe.  Id.  An

impairment is not severe if it is a "slight abnormality or a combination of slight abnormalities

that causes no more than minimal functional limitations[.]"  20 C.F.R. § 416.924(c).

At the third and final step, the ALJ must determine whether the child's severe impairment

meets, medically equals, or functionally equals one of the listed impairments in 20 C.F.R. Part

404, Subpart P, Appendix 1.  20 C.F.R. §§ 416.924(a), 416.925.  If the ALJ finds that the

impairment meets or equals a listing, then the child is deemed disabled.  20 C.F.R. § 416.924(d).

An impairment functionally equals a listing when it results in "marked" limitations in two

of the six domains of functioning, or an "extreme" limitation in one domain. 20 C.F.R. §
416.926a(b) (listing the six domains as: (1) acquiring and using information; (2) attending and
completing tasks; (3) interacting and relating with others; (4) moving about and manipulating
objects; (5) caring for yourself; and (6) health and physical well-being)). A marked limitation is
one that seriously interferes with the child's ability to independently initiate, sustain, or complete
activities. 20 C.F.R. § 416.926a(e)(2)(i). An extreme limitation is more than marked, and is one
that very seriously interferes with the child's ability to independently initiate, sustain, or complete
activities. 20 C.F.R. § 416.926a(e)(3)(i).

THE ALJ'S DECISION

At step one, the ALJ determined that J.A. had not engaged in substantial gainful activity
since his May 30, 2008 application date. Tr. 13. At step two, the ALJ found that J.A. has the
following severe impairments: "affective/mood/bipolar disorders," attention deficit hyperactivity
disorder, and a learning disorder. Id.

At step three, the ALJ determined that J.A.'s impairments did not meet or equal, either
singly or in combination, a listed impairment. Id. In reaching that conclusion, the ALJ
determined that J.A. had less than marked limitations in the domains of acquiring and using
information, attending and completing tasks, interacting and relating with others, caring for
himself, and health and physical well-being. Tr. 15-20. The ALJ also found that J.A. had no
limitation in moving about and manipulating objects. Tr. 18.

Because J.A. did not have an impairment or combination of impairments resulting in
either a marked limitation in two domains or an extreme limitation in one domain, the ALJ
concluded that J.A. was not disabled. Id. at 20.

4 - OPINION & ORDER

/ / /

STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the

Commissioner's findings are based on legal error or are not supported by substantial evidence in

the record as a whole. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial

evidence means more than a mere scintilla but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal

quotation omitted). The court considers the record as a whole, including both the evidence that

supports and detracts from the Commissioner's decision. Id.; Lingenfelter v. Astrue, 504 F.3d

1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational

interpretation, the ALJ's decision must be affirmed." Vasquez, 572 F.3d at 591 (internal

quotation and brackets omitted); see also Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir.

2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not

substitute [its] judgment for the ALJ's") (internal quotation omitted).

DISCUSSION

Plaintiff disputes the ALJ's step three determination that J.A.'s impairments do not meet,

equal, or functionally equal a listed impairment. Specifically, plaintiff challenges the ALJ's (1)

rejection of plaintiff's testimony; (2) failure to recognize psychotic disorder NOS and conduct

disorder as severe impairments or to include the limitations from those impairments in assessing

J.A.'s functioning; (3) failure to find that J.A. has marked limitations in two domains; and (4)

failure to fully develop the record.

/ / /

5 - OPINION & ORDER

I.  Plaintiff's Testimony

The ALJ found plaintiff's testimony not credible.  The ALJ determined that plaintiff

exaggerated testimony regarding J.A. having stabbed her, that the record showed a failure to seek

treatment, and that there were other inconsistencies in her testimony regarding J.A's behavior.

Tr. 14-15.

An ALJ must give reasons "germane to the witness" when discounting the testimony of

lay witnesses.  Valentine v. Commissioner, 574 F.3d 685, 694 (9th Cir. 2009).  Here, the ALJ's

reasons are "germane" and are supported by substantial evidence in the record.[1]

Plaintiff argues that the ALJ misstated the record when he found plaintiff's testimony that

J.A had stabbed her not credible.  Plaintiff maintains that the record supports the accuracy of her

testimony and thus, the ALJ erred in finding an inconsistency.

The record supports the ALJ's finding.  The record contains several references to J.A.

coming at plaintiff with a knife or trying to stab her.  Tr. 214, 219 (Dec. 3, 2008 Disability

Report stating that J.A. "tried to stab mother with kitchen knife," and that "[j]ust last month he

grabbed a large kitchen knife and chased me around with it"); Tr. 224 (undated medical history

report but bearing an April 2010 fax date and indicating that the prior medical history update was

provided February 13, 2009, and stating that "he tried to stab his mother"); Tr. 343 (July 3, 2009

counseling progress note stating that J.A. "is reported to have 'pulled a knife on his mother'" and

then "stabbed her pillow"); Tr. 342 (Aug. 5, 2009 counselor annual update noting that J.A. "is

_____

[1]  Plaintiff suggests that because J.A. is a child, plaintiff is "essentially the claimant" and
the ALJ can reject her testimony only under the standards used to assess a claimant's testimony as
opposed to those used for a lay witness.  Notably, plaintiff cites no authority for this proposition.
I do not discuss it further because even if the standards for evaluating a claimant's testimony
applied, I still conclude that the ALJ did not err.

6 - OPINION & ORDER

reported by his mother to have threaten[ed] her with a large kitchen knife"); Tr. 326 (Apr. 15, 2010 counselor progress note stating that plaintiff reported that J.A. "pulled a knife on me"); Tr. 325 (Apr. 23, 2010 nurse practitioner assessment noting that plaintiff reported that J.A. grabbed a knife and threatened her); Tr. 320 (June 10, 2010 counselor progress note referring to J.A.'s past threat to plaintiff with a knife).

The only reference in the record to J.A. actually stabbing plaintiff was made by a nurse practitioner on July 12, 2010 in which the nurse practitioner first notes concern about J.A.'s comment, during a counseling session on that date, that his mother had punched him and pulled his hair. Tr. 317. The nurse practitioner states that J.A's counselor also attended the session and the two of them discussed whether to report plaintiff's behavior. Id. Then, the nurse practitioner states that given J.A'.s "violent history (such as stabbing his mother and becoming extremely violent), it is unclear if this behavior is defensive, misinterpreted by [J.A.], or valid." Id. Given the repeated references in the record to J.A.'s "attempt" to or "threat" of stabbing plaintiff, and the complete lack of any prior statement by plaintiff herself that J.A. actually stabbed her, the ALJ's interpretation of the evidence in the record was not erroneous and his finding that plaintiff's hearing testimony was inconsistent with the record is supported by substantial evidence in the record. Molina v. Astrue, 674 F.2d 1104, 1111 (9th Cir. 2012) (court must uphold ALJ's findings if they are "supported by inferences reasonably drawn from the record").

The ALJ cited to a number of instances of late cancellations and no-show counseling appointments. Id. The ALJ recognized plaintiff's lack of transportation but she also found that despite the counselor conducting sessions at plaintiff's home, there were still numerous instances when the counselor arrived and no one was there. Tr. 14-15. The ALJ determined that the

record did not support plaintiff's testimony that the counselor had cancelled a number of appointments because of a death in the counselor's family.  Tr. 15.  As a result, the ALJ found that the failure to attend treatment, including treatment accommodated with home visits, was not consistent with plaintiff's allegations of J.A.'s debilitating symptoms.  Id.

The ALJ found further inconsistencies in plaintiff's testimony including that she had told counselors that J.A. did his homework at night and got up early in the morning if he had not finished it, yet testified that she could not make him go to school or do homework.  Id.

The ALJ provided several reasons germane to plaintiff's testimony to support her rejection of that testimony.  The ALJ did not err.

II.  Severe Impairments/Limitations

The ALJ found that J.A. suffered from the severe impairments of affective/mood/bipolar disorders, attention deficit hyperactivity disorder, and a learning disorder.  Tr. 13.  Plaintiff argues that the ALJ erred by failing to find plaintiff's psychotic disorder NOS and conduct disorder to be severe impairments.

In 2009 and 2010, J.A. received counseling from New Perspectives Center where he was seen by both a counselor and a nurse practitioner.  Tr. 316-53.  In the spring of 2010, plaintiff reported aggressive behavior by J.A. to the New Perspectives staff.  Tr. 326 (Apr. 15, 2010 progress note by counselor noting plaintiff's report of J.A. setting fires in the garage, hurting his sisters, and pulling a knife on plaintiff); Tr. 324-25 (Apr. 23, 2010 report by nurse practitioner noting plaintiff's report of J.A.'s interest in fire and knives and being violent toward plaintiff and his sisters); Tr. 323 (May 14, 2010 progress note by counselor noting plaintiff's report of J.A. using knives and lighting fires when becoming angry, hitting and kicking sisters, and hearing

voices).

On May 17, 2010, counselor Darilou Potter, M.S. wrote a progress note indicating that she had given J.A. two new diagnoses based on the new signs and symptoms J.A. complained of experiencing including fire setting, anger issues, threatening his mother with a knife, hitting and kicking his siblings, and hearing voices.  Tr. 322.  The new diagnoses were conduct disorder and psychotic disorder NOS.  Id.; see also Tr. 321 (similar progress note indicating change in diagnoses based on signs and symptoms reported by plaintiff; diagnoses listed as conduct disorder childhood onset and brief psychotic disorder); Tr. 317 (July 12, 2010 report by nurse practitioner listing Axis I diagnoses as conduct disorder and psychotic disorder NOS).

Plaintiff bears the burden of establishing the existence of a severe impairment and that it lasted for at least twelve continuous months.  20 C.F.R. §§ 416.906, 416.909, 416.912; Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999).  Evidence from an acceptable medical source is required to establish that a claimant has a medically determinable impairment.  20 C.F.R. § 416.913(a).  Mental health counselors and nurse practitioners are not acceptable medical sources.  20 C.F.R. § 416.913(a), (d).  With no acceptable medical source providing the diagnoses of conduct disorder or psychotic disorder NOS, these diagnoses cannot be considered impairments at all, much less severe impairments.  Additionally, because these conditions were initially diagnosed in May 2010 and the ALJ made her determination in July 2010, there is no evidence in the record to show that they would necessarily last for twelve months.  Accordingly, the ALJ did not err in failing to find conduct disorder or psychotic disorder NOS as severe impairments.

Plaintiff argues that even if the ALJ did not err in determining that these were not severe impairments, the ALJ is still required to consider the limiting effects of non-severe impairments

in assessing J.A's functional capacity.  20 C.F.R. § 416.945(e) (if signs and symptoms of severe

impairment does not meet or equal a listed impairment, commissioner will consider limiting

effects of all impairments, even those that are not severe, in determining functional capacity).

Plaintiff's argument overlooks that while the ALJ is required to consider the limiting effects of

severe and non-severe impairments, there must be a medically acceptable impairment in the first

instance.  For the reasons explained, neither the conduct disorder nor the psychotic disorder NOS

are impairments and thus, the ALJ was not required to consider any limiting effects derived from

those impairments.

 Even if the ALJ were so required, the ALJ expressly stated that she assessed the

"interactive and cumulative effects of all of the claimant's medically determinable impairment(s),

including any impairments that are not 'severe' in all of the affected domains."  Tr. 13.  And,

contrary to plaintiff's argument that the ALJ failed to even mention the increase in J.A.'s

symptoms noted in the spring 2010 records, the ALJ cited to those records and expressly

mentioned the increase in behavioral problems.  Tr. 18.  The ALJ explained however, that these

incidents occurred after plaintiff elected to taper J.A. off of medications and there was no

evidence of difficulty interacting with people other than family members.  Tr. 18.

 Finally, because the ALJ found that J.A. had no limitations in only one of the six

domains, the ALJ accordingly found that J.A. had some limitation in five domains.  Tr. 10-20,

18.  Thus, in making her findings, the ALJ assessed the functional limitations she found fairly

attributable to J.A.'s impairments.

III.  Marked Limitations in Two Domains

 Plaintiff argues that the ALJ erred in failing to find that J.A. had marked limitations in the

domains of interacting and relating with others and acquiring and using information.

/ / /

A.  Interacting and Relating with Others

The ALJ found that J.A. had less than marked limitation in interacting and relating with others.  Tr. 17-18.  The ALJ noted that J.A. spent time with friends and had no behavior problems at school.  Tr. 17.  He had a history of behavior problems with family members but plaintiff reported improvement with medications.  Tr. 18.  The ALJ noted that in September 2008, examining psychologist Paul. S. Stoltzfus, Ph.D. found no evidence of oppositionality or hostility.  Id.  As stated above, the ALJ expressly noted the increased behavioral problems in April 2010, but explained that this occurred after plaintiff tapered J.A. off of medication and that there was no evidence of difficulties interacting with non-family members.  Id.

Plaintiff argues that the ALJ erred by relying on Dr. Stoltzfus's evaluation and by failing to cite to the 2010 records demonstrating J.A's increased symptoms.  As discussed above, the ALJ did in fact cite to and discuss the 2010 records.  As for Dr. Stoltzfus, plaintiff argues that Dr. Stoltzfus's evaluation was unreliable because, as plaintiff testified during the hearing, due to plaintiff's and J.A's inability to arrive to the appointment on time, only twenty minutes out of the allotted two hours remained for the evaluation.  Tr. 36.  Plaintiff stated that Dr. Stoltzfus talked only with plaintiff.  Id.

According to Dr. Stoltzfus, he obtained information from a clinical interview, behavioral observation, review of an October 4, 2007 Individual Education Plan, and review of a February 24, 2006 Learning Disorder Summary from the Woodburn School District.  Tr. 227.  He also relied on an ADHD Rating Scale completed by plaintiff, a Child Behavior Checklist completed

11 - OPINION & ORDER

by plaintiff, and the results of the Wide Range Achievement Test which he administered to J.A.
Id.

His report describes his findings from the clinical interview in the areas of psychosocial history, education, and medical/psychiatric history, symptoms, etc. Tr. 227-29. Dr. Stoltzfus also discussed the results of the ADHD Rating Scale and Child Behavior Checklist. Tr. 229. He further discussed plaintiff's activities of daily living and his behavioral observations. Id.

There is no evidence in the record to support plaintiff's contention that because the appointment with Dr. Stoltzfus was limited it time, it was invalid. As defendant notes, Dr. Stoltzfus does not indicate in his report that he needed additional time to assess J.A., to interview plaintiff, to conduct tests, or to review records. He makes no mention that his findings were speculative or not final because of time limitations. I reject plaintiff's argument that Dr. Stoltzfus's report is unreliable because of the time constraints.

Plaintiff further suggests that Dr. Stoltzfus's report is unreliable because it was rendered in 2008 and Dr. Stoltzfus did not have the 2010 records to review as part of his evaluation. But, the ALJ discussed the 2010 records and concluded that while they revealed escalating behavior, they did not show that J.A. had problems interacting with anyone outside of his family. As a result, she accounted for the recent developments and still found that J.A. did not have a marked limitation in the domain of interacting with others. The ALJ did not err in reaching this conclusion.

B. Using and Acquiring Information

The ALJ found that J.A. was less than markedly limited in his ability to acquire and use information. Tr. 16. As the ALJ explained, this domain involves how well children perceive,

12 - OPINION & ORDER

think about, remember, and use information in all settings, which include daily activities at home, at school, and in the community.  Tr. 15 (citing 20 C.F.R. § 416.926a(g); Soc. Sec. R. 09-3p).

The ALJ noted that in February 2006, when J.A. was in first grade, he was found eligible for an Individualized Education Plan based on a communication disorder and emotional disturbance.  Tr. 16.  But, as the ALJ explained, plaintiff failed to attend conferences and it was noted that J.A. was absent from school twenty-five percent of the time.  Id.  An assessment performed in October 2007, when J.A. was in third grade, revealed that J.A. was achieving at the first grade level in most academic areas.  Id.  However, in 2008, his speech skills had improved, although he still had below grade-level reading and writing skills.  Id.  Then, in October 2009, plaintiff reported J.A. was getting good grades and had three As, two Bs, and one C.  Id.  Furthermore, December 2009 treatment notes reflected improved behavior and continued good grades.  Id.

For the reasons previously explained, I reject plaintiff's argument that the ALJ's reliance on Dr. Stoltzfus's opinion was error.  Plaintiff further argues that the ALJ erred by failing to discuss reports by two Disability Determination Services (DDS) non-examining psychologists' assessments which found that J.A.'s ability to acquire and use information was at a marked level. Tr. 233-38 (October 2008 evaluation by psychologist Dorothy Anderson, Ph.D.); Tr. 315 (November 2008 affirmance by psychologist Robert Henry, Ph.D., of October 2008 evaluation).

Defendant notes that neither of these assessments establish disability because they concluded that J.A. was markedly limited only in the domain of acquiring and using information and was not markedly or expressly limited in any other domain.  Because a finding of disability

13 - OPINION & ORDER

requires marked limitation in two or more domains, or extreme limitation in one domain, the

DDS examiners' assessments do not provide for a finding of disability.  20 C.F.R. §

416.926a(e)(2).

Defendant's argument misses the point.  Plaintiff does not cite to the DDS examiners'

assessments to argue that they conclusively establish disability.  Instead, plaintiff argues that the

ALJ erred by failing to discuss the DDS examiners' opinions because they concluded that J.A.

was markedly limited in the domain of acquiring and using information and the ALJ reached a

contrary conclusion as to that domain.  Nevertheless, assuming the ALJ erred in failing to discuss

these opinions, I agree with defendant that the error was harmless because even if the ALJ had

credited these opinions and concluded that J.A. was markedly limited in the domain of acquiring

and using information, the evidence fails to establish that J.A. had a marked or extreme

limitation in any other domain.

Plaintiff has the burden of demonstrating not only that the ALJ erred, but that the error

caused a "substantial likelihood of prejudice."  McLeod v. Astrue, 640 F.3d 881, 887-88 (9th Cir.

2011).  "Where harmlessness is clear and not a borderline question, remand for reconsideration is

not appropriate."  Id. (footnote omitted).  Here, plaintiff fails to demonstrate that the ALJ's error

in failing to credit the DDS examiners' opinions as to J.A.'s limitations in the domain of

acquiring and using information has caused prejudice to J.A.  As previously explained,

substantial evidence in the record supports the ALJ's decision regarding the domain of interacting

and relating to others.  Plaintiff makes no challenges to the ALJ's conclusions regarding J.A.'s

limitations in any of the remaining domains.  Therefore, the error is harmless.

IV.  Development of the Record

14 - OPINION & ORDER

Plaintiff argues that the ALJ erred by not fully developing the record.   The ALJ has a duty to develop the record when there is ambiguous evidence or the ALJ finds that the record is inadequate to allow for proper evaluation.  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).  An ALJ does not have a duty to request more information from physicians, however, if it appears that substantially all of their medical records were before the ALJ and "[t]here was nothing unclear or ambiguous about what they said." McLeod, 640 F.3d at 884.

Here, the ALJ did not find the record inadequate to allow for a proper evaluation. Although plaintiff argues that the 2010 medical records required further exploration, as explained above, the ALJ did in fact cite to those records, noted the increase in concerning behavior, but determined that the cause was at least in part due to plaintiff's having tapered J.A. from certain medications.  The record was not ambiguous.  The ALJ's duty to further develop the record by ordering a consultative examination or requesting additional information from J.A's treating practitioners was not triggered in this case.

## CONCLUSION

The Commissioner's decision is affirmed.

IT IS SO ORDERED.

Dated this _23_ day of _April_, 2013

Marco A. Hernandez
United States District Judge

15 - OPINION & ORDER